UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CYRUS GRIFFIN,<br><br>         Plaintiff,<br><br>-against-<br><br>THE CITY OF NEW YORK, POLICE OFFICER CHRISTOPHER O'CONNOR, *Shield No. 24675*, *individually*, SERGEANT DAVID ALLEVA, *Shield No. 1659*, *individually*, POLICE OFFICER SHREEGANESH MEADE, *Shield No. 867*, *individually*, and NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE,<br><br>         Defendants. | **OPINION AND ORDER**<br><br>16 Civ. 05790 (ER) |

Ramos, D.J.:

  Cyrus Griffin brings this 42 U.S.C. § 1983 action against the City of New York, three of its police officers, and the New York County District Attorney's Office for malicious prosecution, abuse of process, and denial of a fair trial. Defendants move for summary judgment. For the reasons set forth below, Defendants' motion is GRANTED.

**I.  Background**

  On June 22, 2014, at 11:03 PM, a man called 911 to report a shooting in the vicinity of the corner of 10th Ave. and 51st St. Doc. 44-1, 1. The caller told the dispatcher that "6-8 black males were in a circle and then one shot rang out." Doc. 44-1, 1. Officer Shreeganesh Meade responded to the call. Doc. 44-2, 4. At the scene, Meade spoke to approximately three witnesses and learned that, "there was a large group," that "a dispute occurred," and that "one of the members of this group displayed a handgun and discharged a round, and all the members of this group fled in different directions." Doc. 44-2, 5. Officers Christopher O'Connor and David

Alleva also heard the broadcast and began canvasing for suspects and victims in the area. Doc. 44-3, 5; Doc. 44-4, 4. Six blocks north of the shooting, while driving westbound on 57th St., O'Connor and Alleva observed two black men, subsequently identified as Cyrus Griffin and Keithley Barthley, at the intersection of 10th Ave. and 57th St. Doc. 44-3, 6. According to Alleva, Griffin and Barthley "appeared out of breath," "visibly sweating," and "speed walking." Doc. 44-3, 7. The officers then made a U-turn on 57th St. and turned left on 10th Ave. proceeding in a northerly direction to continue to observe the two men. *Id.* at 8. Alleva and O'Connor attempted to interview Griffin at the intersection of 10th Ave. and 58th St. but he ran. *Id.* at 12–13; Doc. 44-4, 9. Alleva chased Griffin and called for assistance. Doc. 44-3, 13. Meade heard the broadcast and pursued Griffin. Doc. 44-2, 15. Alleva eventually caught Griffin and placed him under arrest. Doc. 44-3, 15. Griffin told Alleva that he ran because he had had a small amount of marijuana but that he had discarded it during the chase. *Id.* at 16.

The officers placed Griffin in Meade's police car and transported him to the Midtown North Precinct. *Id.* at 17–18. Meanwhile, officer Alleva obtained video surveillance from the location of the shooting, 10th Ave. and 51st St., which showed Griffin and Barthley running from the scene. *Id.* at 20. Meade prepared an arrest report for tampering with evidence, obstructing governmental administration, unlawful possession of marijuana, and disorderly conduct. Doc. 44-9.

The next day, sanitation workers found a firearm in a trash pile on 10th Ave., between 57th St. and 58th St., Doc. 44-3, 19, the block where the officers encountered Griffin and Barthley the previous evening, and an analysis revealed that the firearm contained two cartridges. Doc. 44-13, 4. Meade searched for surveillance videos and found two from cameras placed at 881 10th Ave, between 57th St. and 58th St. Doc. 44-2, 36. According to Meade, one of the original

videos showed "Mr. Griffin throw what looked like a handgun into a pile of trash," as the police cruiser approached. Doc. 44-2, 28. He made a copy of this video with his cellular telephone. Doc. 52-4, 8. Meade prepared a new arrest report for criminal possession of a weapon in the second degree, reckless endangerment, and tampering with evidence. Doc. 44-14. Melanie Soberal, an assistant district attorney, received the second arrest report from Meade and spoke with Alleva, O'Connor, and Meade about the arrest. Doc. 44-3, 23–24 (Alleva); Doc. 44-4, 13–14 (O'Connor); Doc. 44-7, 4–5 (Meade). Meade also provided Soberal with a copy of the original video from 881 10th Ave. *Id.* at 8. Soberal testified that she viewed the original video more than five times, Doc. 56-3, including one time with the Chief of her Bureau, Doc. 44-7, 32. She then prepared a criminal complaint, *id.* at 17, which her supervisor approved, *id.* at 29. The criminal complaint charged Griffin with Criminal Possession of a Weapon in the Second Degree. Doc. 44-15. In the criminal complaint, Meade stated as follows:

> On the video, I saw: (i) both defendants walking together in front of 881 10th Avenue; (ii) defendant Barthley cross 58th Street in the middle of the block; and (iii) defendant Griffin flick his wrist in the direction of a pile of garbage bags in front of 881 10th Avenue as a marked police vehicle approached.

Doc. 44-15. Meade signed the complaint. *Id.*

The parties have not provided the original video, but Griffin has provided a copy of the recording of the video on Meade's cellular telephone. In her declaration, Defendants' counsel explains the absence of the original by stating:

> The District Attorney's Office file relating to the prosecution of Bartley [sic] and plaintiff, as it was turned over to the Office of Corporation Counsel, contained only the videos recovered by Officer Allega [sic] from 755 10th Avenue (at 51st Street), not the videos recovered by Officer Meade from 881 10th Avenue.

Doc. 44, 2. The parties offer various accounts of what the missing video portrayed. In his deposition, Meade testified that, on the original video, he "observed Mr. Griffin throw what

3

looked like a handgun into a pile of trash." Doc. 44-2, 28. In one instance in her deposition, Soberal expressed less certainty about what the original video portrayed but described Meade's characterization as arguable: "[W]hen you watched it in slow motion and you paused it at the relevant time, there was an argument that he had – he flicked his wrist and had something in his hand, but that it was very blurry, and it was – it was arguable." Doc. 52-1, 2.[1] In another instance, however, she testified more confidently: "Q. And based on what you say in that video, you believed that you could see Mr. Griffin flick his wrist in the direction of garbage bags with an item in his hands? A. With something in his hand, yes." Doc. 44-7, 27.

Griffin relies on the cellular telephone video of the original as evidence of what Meade saw on the original video. Doc. 49, 12. Defendants argue that the cellular telephone copy of the original is significantly less clear. Doc. 43, 19. For example, in comparing the two versions, Soberal testified that the original video "was darker than this one" and that, in the cellular telephone video, "There's a lot of white, like cloudy looking almost on the screen of this footage." Doc. 44-7, 21. Meade, in his deposition, implied that the original and the recording were similar to the extent that he could see Griffin throw a firearm into the trash on both videos. Doc. 52-4, 7.[2]

---

[1] In her deposition, after being shown the cellular telephone video, Soberal testified that if she was asked to rely solely on the cellular telephone video—rather than the original—she would not have signed her name to a complaint that asserted "in this video you can observe Cyrus Griffin flick his wrist into the garbage." Doc. 52-1 3–4. However, when asked whether Soberal would have charged "Cyrus Griffin with criminal possession of a weapon" based on the cellular telephone video, she answered , "It's hard to say. We could. We could write it up and further investigate it which is what we did anyway." *Id.* at 3.

[2] Defendants assert that Griffin has not and cannot dispute the evidence comparing the original video and the recording because Griffin never saw the original video. Doc. 43, 19. In the declaration that he attaches to his opposition briefing, Griffin declares, "I have seen the video P.O. Meade claims shows me tossing the firearm" and "That video does not show any such thing." Doc. 51. As an initial matter, it is unclear if Griffin, in his declaration, claims to have seen the original or the recording. More importantly, though, the Court does not consider this evidence because "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

On January 30, 2015, the criminal court dismissed the case. Doc. 44-18. On July 20, 2016, Griffin filed the instant complaint under 42 U.S.C. § 1983 for deprivation of federal civil rights, false arrest, malicious prosecution, denial of a fair trial, malicious abuse of process, and municipal liability. Doc. 1, 5–10. He seeks $1,000,000 in compensatory damages, $1,000,00 in punitive damages, plus attorneys' fees and costs. Doc. 1, 11. Griffin has voluntarily dismissed his false arrest and municipal liability claims. Doc. 49, 24. In his brief, Griffin has not argued that anyone but Meade should be held liable for any of these constitutional torts.

## II. Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id*. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

## III. Discussion

Griffin seeks redress under 42 U.S.C. § 1983 for malicious prosecution, abuse of process, and denial of a fair trial. The three remaining claims turn on Griffin's allegation that Meade lied about what he saw on the lost video and that Meade prosecuted Griffin for improper reasons.

5

Griffin, however, has provided no evidence to contradict Meade's characterization of the lost video or to support his assertions about Meade's inappropriate motivations. As a result, the Court grants summary judgment on these three claims.

**A.     Malicious Prosecution**

"[F]ederal law defines the elements of a §1983 malicious prosecution claim . . . ." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). To prevail under a Section 1983 malicious prosecution theory, a plaintiff must show: "(i) the commencement or continuation of a criminal proceeding against her; (ii) the termination of the proceeding in her favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks omitted). Additionally, a plaintiff must demonstrate "a post-arraignment seizure." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013). Defendants do not contest that there was a favorable termination and a post-arraignment seizure. As a result, the Court's decision turns on whether Meade commenced a criminal proceeding against Griffin in the absence of probable cause and with malice.

**1.     Commencement**

In this District, "It is well settled . . . that signing and submitting complaints constitutes an initiation of a prosecution." *Williams v. City of New York*, No. 05 Civ. 10230 (SAS), 2007 WL 2214390, at *10 (S.D.N.Y. July 26, 2007). *See also Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) ("In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints"). In *Swartz v. Insogna,* the Second Circuit reversed a district court's grant of

summary judgment on a malicious prosecution claim and held that "when [the officer] swore out a complaint against [the plaintiff] and filed it in a criminal court, he commenced a criminal action." 704 F.3d 105, 112 (2d Cir. 2013). In *Ricciuti v. N.Y.C. Transit Authority*, the Second Circuit held that "[a]lthough these charges were added by the [prosecutor], and thus not directly filed by [the officer], a jury could find that [the officer] played a role in initiating the prosecution by preparing the alleged false confession and forwarding it to prosecutors." 124 F.3d 123, 130 (2d Cir. 1997). As a result, "A jury may permissibly find that a defendant initiated a prosecution where he fil[ed] the charges" or "prepar[ed an] alleged false confession and forward[ed] it to prosecutors." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010). Here, Meade, a police officer, made allegedly false representations in a felony complaint and signed it. Under the standards for a 1983 malicious prosecution claim articulated by *Swartz*, *Ricciuti*, and *Manganiello*, a jury could conclude that Meade initiated a prosecution against Griffin.

Defendants argue that Meade did not initiate the criminal action because he "merely conveyed . . . that which was depicted in the video" and because "[o]ne who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." Doc. 43, 23. To be sure, Soberal testified that she carefully reviewed the original tape, including reviewing it with her supervisor, and they determined that the video at least corroborated what Meade said he saw, i.e., that Griffin flicked his wrist as he walked past the garbage pile and appeared to have something in his hand. However, this proposition, even if true, is not determinative because Meade did more than just convey information to a prosecutor: he swore to an allegedly false statement in a felony complaint and signed it. While it is a close call, the Court need not decide this issue because the claim stumbles on the remaining prongs.

7

**2.     Probable Cause**

Regardless of who initiated the prosecution, the claim fails because no jury could find that Meade lacked probable cause to prosecute Griffin and because "the existence of probable cause is a complete defense to a claim of malicious prosecution." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). Here, officers responded to a call of a shooting and interviewed witnesses. Recovered surveillance video showed Griffin and Barthley fleeing the scene of the shooting. The officers then observed Griffin and Barthley, who fit the suspects' description, and who appeared to be sweating and out of breath, six blocks north of the shooting. The two men fled when the officers attempted to talk to them. In another surveillance video, the original of which is now lost, Griffin appeared to throw an object into a pile of trash as the police car approached. The next day, sanitation workers found a firearm in the very same pile of trash, and a firearm analysis revealed that the firearm contained two cartridges.

Although she frankly acknowledged that she would not have signed the criminal complaint if based only on the cellular telephone copy of the video, Soberal and her supervisor authorized the filing of a criminal complaint based on the original video.[3]

Under NY Penal Law 265.03(1)(b), the elements of criminal possession of a weapon in the second degree are possession of a loaded firearm and intent to use it unlawfully against

---

[3] Soberal's testimony about the content of the original video is admissible. *Cameron v. City of New York*, 598 F.3d 50, 67 (2d Cir. 2010) ("It also would appear to be permissible for [the prosecutor] to testify as to the *content* of the 911 calls and the booking photo . . . as the photo and the tapes of the calls are no longer in existence and [the prosecutor] personally observed them.").

8

another. Under NY Penal Law 265.03(3), the element of criminal possession of a weapon in the second degree is just possession of a loaded firearm. Defendants' evidence—including a video of Griffin apparently throwing an object into a garbage pile as a police car approached shortly after the shooting, and the recovery of a firearm from that garbage pile the next morning—would lead a reasonably prudent person to believe Griffin guilty of these crimes.

At the very least, the foregoing facts establish arguable probable cause. "In the context of . . . malicious prosecution claims, an officer is entitled to qualified immunity if he had either probable cause or 'arguable probable cause.'" *Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017). "'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). Rather, "if officers of reasonable competence could disagree on whether the probable cause test was met," arguable probable cause exists. *Dufort*, 874 F.3d at 354. In light of the facts described above, officers of reasonable competence could at least disagree on whether the probable cause test was met here. As a result, arguable probable cause exists.[4]

**3.  Malice**

"A lack of probable cause generally creates an inference of malice." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003). If probable cause exists, however, a plaintiff must also, to prove malice, "show that the defendant acted in bad faith, i.e., on the basis of a wrong or improper motive, something other than a desire to see the ends of justice served." *Watson v.*

---

[4] As Defendants aptly point out, even if Meade mistakenly concluded that the item that Griffin flicked towards the pile was a gun, or even if he mistakenly concluded that Griffin flicked any object at all, the same result would obtain. The analysis turns on Meade's decision in light of what he knew at the time of his actions—not what actually happened—because "[a]rguable probable cause exists when a reasonable police officer in the *same circumstances* and possessing the *same knowledge* as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (first and second emphasis added).

*United States*, 865 F.3d 123, 134 (2d Cir. 2017) (internal quotation marks omitted). "Only where probable cause to initiate a proceeding is so totally lacking may malice reasonably be inferred." *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001) (internal quotation marks omitted). Here, probable cause existed for the prosecution and Griffin has provided no evidence of a wrong or improper motive. Given the existence of probable cause and the absence of evidence of malice, the Court will not assume that malice motivated Meade's actions because "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42 (2d Cir. 1986). As a result, summary judgment is appropriate on this claim.

**B.     Abuse of Process**

"In order to state a [§ 1983] claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action . . . [and] that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (per curiam). "[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003). "Examples of the types of collateral objectives covered by the tort of malicious abuse of process include the infliction of economic harm, extortion, blackmail, and retribution." *Johnson v. City of New York*, No. 15 Civ. 8195 GHW, 2017 WL 2312924, at *18 (S.D.N.Y. May 26, 2017). Importantly, "abuse of process is the improper use of process *after* it is regularly issued." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (internal quotation marks omitted and emphasis added).

"There has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process . . . ." *Mangino v. Inc. Vill. of*

*Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015). The Second Circuit itself has come to seemingly antithetical conclusions on this issue. *Compare Weiss v. Hunna*, 312 F.2d 711, 717 (2d Cir. 1963) ("[T]he gist of the tort of abuse of process, as distinguished from malicious prosecution, is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish" (internal quotation marks omitted)), *with PSI Metals, Inc. v. Firemen's Ins. Co. of Newark*, 839 F.2d 42, 43 (2d Cir. 1988) ("[A]n abuse of process claim has three essential elements: (1) regularly issued process, either civil or criminal, (2) *an intent to do harm without excuse or justification*, and (3) use of the process in a perverted manner to obtain a collateral objective." (internal quotation marks omitted and emphasis added)). The Court of Appeals has not resolved this uncertainty. *Mangino*, 808 F.3d at 959 ("We need not, and do not, resolve this confusion here . . . .").

Under either formulation, Griffin's claim lacks merit. If probable cause *does* negate an abuse of process claim, as the Second Circuit held it does in *PSI Metals, Inc.*, 839 F.2d at 43, the Court would grant summary judgment on Griffin's abuse of process claim because Meade had probable cause, if not arguable probable cause, to initiate the prosecution. *Cf. Betts v. Shearman*, 751 F.3d 78, 81 (2d Cir. 2014) ("We hold, first, that because arguable probable cause existed to arrest [the Plaintiff], his claims for false arrest, false imprisonment, abuse of process, and malicious prosecution were properly dismissed."). If probable cause *does not* sink an abuse of process claim, the Court would still grant summary judgment on Griffin's abuse of process claim because he has not provided any evidence that Meade ever abused the criminal process to pursue a collateral objective, such as infliction of economic harm, extortion, blackmail, and retribution. Griffin's speculation is insufficient. *Argus Inc.*, 801 F.2d at 42.

11

## C. Fair Trial

To claim that an officer denied a plaintiff a fair trial by fabricating information, the plaintiff must show that "an (1) investigating official (2) fabricate[d] information (3) that [wa]s likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). Griffin's claim fails on at least the second prong. As explained above, there is no evidence that Meade fabricated any evidence. Meade asserted that the original video showed Griffin flick a firearm into the trash and Soberal and her supervisor independently determined that the video at least corroborated what Meade said he saw. Griffin's strongest evidence, Soberal's testimony that she would not have relied on the cellular telephone video, does not contradict Meade's assertion or her testimony about the original video. As a result, the Court grants summary judgment on this claim.

## D. Qualified Immunity

Finally, the Court concludes that Meade is entitled to qualified immunity. A police officer receives qualified immunity when "(1) [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for [her] to believe that [her] actions were lawful at the time of the challenged act." *Betts*, 751 F.3d at 82–83. "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).

Under this standard, "[T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Mangino*, 808 F.3d at 959 (2d Cir. 2015) (internal quotation marks omitted). "[I]f officers of reasonable competence

could disagree on th[e] issue, immunity should be recognized." *Id.* (internal quotation marks omitted).

Qualified immunity is appropriate here. Almost the entirety of Griffin's argument rests on the assertion that Meade lied when he testified that he saw Griffin on the surveillance tape toss the gun into the garbage pile. This assertion in turn rests on the quality of the cellular telephone video, which Griffin alleges shows no such thing. However, even if Griffin is correct that the copy of the video shows no such thing, Soberal's undisputed testimony that her review of the original video at least corroborated Meade's observation establishes that officers of reasonable competence could disagree on the issue. As a result, he would still be entitled to the defense.

## IV.     Conclusion

For the reasons stated above, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 41.

It is SO ORDERED.

Dated: January 18, 2019
       New York, New York

_____
Edgardo Ramos, U.S.D.J.